IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VAUGHN NEITA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 14 CV 1107 |
| | ) | |
| CITY OF CHICAGO, CHICAGO | ) | Honorable James F. Holderman |
| POLICE OFFICERS JANE RADDATZ, | ) | |
| Star #1813, M. ULDRYCH, Star #6501, | ) | |
| CHERIE TRAVIS, DAN CALANDRIELLO | ) | Magistrate Judge Finnegan |
| and COUNTY OF COOK, | ) | |
| | ) | |
| Defendants. | ) | Jury Demanded |

**DEFENDANT OFFICERS' REPLY IN SUPPORT OF THEIR
MOTION FOR JUDGMENT ON THE PLEADINGS**

NOW COME Defendants Officer Jane Raddatz and Officer Melissa Uldrych ("Defendant Officers") by and through their attorneys, SmithAmundsen LLC, and for their Reply in Support of their Motion for Judgment on the Pleadings as to Counts I, II, IV, and V of Plaintiff's Amended Complaint[1] against them, state as follows:

**I. No Inferences are Required to Find Probable Cause to Arrest Existed Based on Plaintiff's Amended Complaint.**

Plaintiff argues: "Granting defendants' motion depends in large part on accepting defendants' characterization of the events as unequivocally Plaintiff's fault and caused by him." Plaintiff's Response at 3. This is not the case in the least respect. Defendant Officers do not draw inferences, make assumptions, or connect dots that the Plaintiff's Amended

---

[1] When Defendant Officers filed their motion, Plaintiff had filed his Amended Complaint. Currently, the Court is reconsidering Plaintiff's motion for leave to file the Amended Complaint. The allegations in the Complaint and Amended Complaint as they pertain to the Defendant Officers are the same. Defendant Officers will continue to refer to the Amended Complaint for consistency, but if the Amended Complaint is not allowed, they respectfully request that their motion pertain to the Complaint.

1

Complaint does not connect on its own. Plaintiff cannot dispute that his own allegations – on their face and without "characterization" – establish probable cause.

Plaintiff cannot understand how his pleading "morphs into an admission that [he] allowed the dog to be sick and eat fecal matter" or how he could have "exercise[d] control over the animal impulses of the dogs he cared for." Plaintiff's Response at 3-4. Yet, he admits these are "*dogs he cared for.*" Under the law, a dog owner *shall* provide "humane care" for each his dogs. See 510 ILCS 70/3(a)(4). A dog owner *shall* provide "veterinary care when needed to prevent suffering" of his dogs. See 510 ILCS 70/3(a)(3). A dog owner's duties would necessarily include ensuring that his dog is not allowed to eat fecal matter and become sick. An owner's duties would include that if his dog did become sick, he provide the dog with veterinary care to prevent suffering. The duties would also include ensuring that his dog does not attack other dogs and ensuring that his dog is not allowed to kill another dog. The other alleged fact that Plaintiff conspicuously ignores in his Response is that he "ran a shelter" for dogs. Amended Complaint, Exhibit A attached to Defendant Officers' Motion for Judgment on the Pleadings, ¶9. Under his own pleading and admission, Plaintiff is the person responsible for these dogs. Defendant Officers certainly had probable cause to believe Plaintiff was not providing "humane care" for one or more of his dogs.

Police officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed" an offense. *Kelley v. Myler,* 149 F.3d 641, 646 (7th Cir. 1998). The court evaluates probable cause "not on the facts as an omniscient observer would perceive them," but rather "as they would have appeared to a reasonable person in the position of the arresting officer." *Id.*

Contrary to Plaintiff's argument, no inferences or explanations are required to reach the position that a reasonable officer could conclude that Plaintiff committed an offense of failing to provide "humane care" to his dog or veterinary care to prevent his dog's suffering. See 510 ILCS 70/3(a)(3) and (a)(4). Dogs who are provided humane care are not exposed to other dogs under the owner's care who attack and kill them. Dogs who are provided humane care are not allowed free reign to attack and kill other dogs. Dogs who are provided humane care are not allowed to eat and ingest fecal matter to the point where they become sick. If the dog does become sick, an owner shall provide veterinary care to prevent suffering. Plaintiff ran a dog shelter. The facts as pled serve as separate, distinct, and undisputed facts occurring simultaneously that make it reasonable for an officer to believe Plaintiff failed to provide humane care or veterinary care to his dogs.

Plaintiff attempts to avoid dismissal by arguing that he did "not allege the defendant-officers knew one of this [sic] dogs was sick and another over [sic] aggressive." Plaintiff's Response at 5. Plaintiff's argument is without merit. Plaintiff pleads he "ran a shelter," he "went to Animal Care and Control to relinquish two dogs," one of his dogs was sick, eating fecal matter, another of his dogs attacked and killed a dog, an agent of Animal Care and Control "called the police," and the "Defendant Officers responded to the call." Amended Complaint, Exhibit A attached to Defendant Officers' Motion for Judgment on the Pleadings, ¶¶9-14. This Court can rely "on its judicial experience and common sense" when evaluating a case at the pleading stage and whether something is reasonable or plausible. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 679 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Common sense and judicial experience would stand to support the position that the Defendant Officers learned that Plaintiff ran a dog shelter and was at Animal Care and Control to relinquish an

3

overly aggressive dog that had been allowed to kill another dog and learned, or saw for themselves, the sick dog that had been eating its fecal matter when they "responded to the call" from an agent of Animal Care and Control and arrested the Plaintiff who was at Animal Care and Control with the sick and aggressive dogs.

## II. The Defendant Officers are Protected by Qualified Immunity.

Plaintiff concedes that qualified immunity can be raised as a defense by a Motion for Judgment on the pleadings. See Plaintiff's Response at 7. Here, the question is whether a reasonable officer could believe it was lawful to arrest Plaintiff upon receiving a call from an agent of Animal Care and Control and upon the officer's arrival at the facility. See *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Plaintiff's pleading that he "ran" a shelter for dogs, that a dog under his care was able to attack another dog and kill it, and that a dog under his care had been allowed to eat fecal matter and become sick establishes as a matter of law that the Defendant Officers could reasonably believe it was lawful to arrest Plaintiff for failing to provide "humane care" for his dogs. See 510 ILCS 70/3(a)(4).

## III. Defendant Officers Are Entitled to Judgment on the Pleadings Regarding Plaintiff's Claim of Unlawful Search and Seizure.

Plaintiff makes no response to the Defendant Officers' argument that the pleaded facts show that the Defendant Officers had probable cause to arrest Plaintiff, and thus, under the law, properly search him. Nor does Plaintiff allege a seizure of any property. Plaintiff's sole argument in an attempt to salvage a claim of unlawful search of his business is that "there was no complaint made against Plaintiff whatsoever." Plaintiff's Response at 6. This argument makes no sense. The entire basis for Plaintiff's claims in this case is that a complaint was made against him. He alleges that when he arrived at Animal Care and Control to relinquish his dogs, an agent of Animal Care and Control "called the police," and

4

then the police "responded to the call." Amended Complaint, Exhibit A attached to Defendant Officers' Motion for Judgment on the Pleadings, ¶¶10-14. He also alleges that he "ran a shelter" for dogs. *Id.*, at ¶9. He further alleges that the agent of Animal Care and Control "caused the Defendant Officers to arrest Plaintiff." *Id.*, at ¶15. Plaintiff is complaining because an agent of Animal Care and Control made a complaint against him to the police regarding his dogs. Thus, section 10 of the Humane Care for Animals Act, which applies when "a complaint of a suspected violation of" the Act is received and allows "any law enforcement official" to enter Plaintiff's business to investigate the complaint, is applicable to the case at hand. See 510 ILCS 70/10.

IV. **Plaintiff Has Not Pled Facts That Suggest Malice And That Defendant Officers Took Action in Pursuit of the Criminal Action Against Him.**

In his Response, Plaintiff essentially concedes he did not plead malice and instead relies on *Frye v. O'Neill*, 166 Ill. App. 3d 963, 977 (4th Dist. 1988), and argues that "malice can be inferred from the absence of probable cause." Plaintiff's Response at 8. In so doing, Plaintiff distorts Illinois case law. Plaintiff omits the qualifying language in *Frye* that "the trier of fact may infer malice from lack of probable cause if there is no other credible evidence which refutes that inference." *Id.* Furthermore, the case upon which *Frye* relies, *Harpham v. Whitney*, 77 Ill. 32 (1875), clearly states: "To maintain an action for malicious prosecution, it must appear that there was not probable cause for the prosecution, *and* also that the defendants were actuated by malice in instituting the prosecution. There must be *both* want of probable cause and malice." *Id.*, at 38-39. (Emphasis added).

Illinois courts demand that "in order to state a claim for malicious prosecution against the police officers under § 1983, [a plaintiff] must do more than merely claim that they arrested and detained him without probable cause." *Snodderly v. R.U.F.F. Drug Enforcement Task*

5

*Force*, 239 F.3d 892, 901 (7th Cir. 2001), *citing Sneed v. Rybicki,* 146 F.3d 478, 481 (7th Cir. 1998). A plaintiff "must allege that the officers committed some improper act after they arrested him without probable cause, for example, that they pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence." *Id.,* at 901.

Plaintiff fails to allege any acts committed by the Defendant Officers other than the acts they took pursuant to the arrest for violation of the Humane Care for Animals Act, and he does not allege that the Defendant Officers took any action in pursuit of the criminal action against him. Under the Plaintiff's logic, every time an arrest is made without probable cause, a plaintiff could state a claim for malicious prosecution. This is clearly not supported by law, and it is the reason "malice" is an essential element of the claim.

Tellingly, Plaintiff fails to respond to the Defendant Officers' argument that once charges were initiated against him for violation of the Humane Care for Animals Act, the prosecution of the action became the duty of the state's attorney. See 55 ILCS 5/3-9005(a)(1). Plaintiff concedes as much in arguing in his Response to Defendant Dan Calandriello and Cook County's Motion For Reconsideration at page 2 that "the factual allegations now unequivocally support Plaintiff's theory that Defendant [Assistant State's Attorney] Calandriello initiated criminal proceedings against Plaintiff by personally attesting to the facts in criminal complaint…"

Without something more than an alleged arrest without probable cause, Plaintiff's malicious prosecution claim against Defendant Officers necessarily fails.

## V. Plaintiff Has Not Pled Facts That Show Extreme and Outrageous Conduct Required for Intentional Infliction of Emotion Distress (IIED) and Plaintiff's Claim is Barred by the Statute of Limitations.

In response to Defendant Officers' argument that he has failed to plead extreme and outrageous conduct, Plaintiff references and relies on claims he did not actually plead. For example, he argues that Defendant Officers made "deliberate attempts to sabotage plaintiff's business." Plaintiff's Response at 9. However, there are no allegations in the Amended Complaint that there was an attempt at "sabotage." Moreover, there are no allegations that "defendants then went out of their way to illegally search his business." *Id*. The Response also mentions that Plaintiff was "charged with fifteen different offenses," even though that allegation is not made in the Amended Complaint. *Id*. Plaintiff's rhetoric is insufficient to make up for the lack of allegations to show extreme and outrageous behavior.

Assuming *arguendo* there was no probable cause, it alone does not make the situation "extreme and outrageous." An arrest without probable cause is simply not enough. See *Khan v. American Airlines*, 266 Ill. App. 3d 726, 733, 639 N.E.2d 210 (1st Dist. 1994) (court affirmed dismissal of plaintiff's IIED claim against American Airlines and two of its employees after the employees gave him a stolen ticket, arrested him for possessing the stolen ticket, and turned him over to the police, because, the court held, the allegations were not of such a nature and degree that no reasonable person could be expected to endure them). Pleading a claim for IIED is a high hurdle that Plaintiff fails to satisfy.

Finally, Plaintiff argues against the statute of limitations defense by stating "the date of accrual for his claim would be the date when the the [sic] tortious conduct is abated." Plaintiff's Response at 8. He argues that until the acquittal, the conduct continued. The flaw in his argument is that Defendant Officers cannot be held responsible for the actions of prosecutors.

Nevertheless, even assuming they would be, Plaintiff fails to allege the Defendant Officers engaged in any "continuing unlawful acts" following his arrest, as required under *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 798 N.E.2d 75, 85 (2003), upon which Plaintiff relies. Plaintiff essentially asks this Court to read continuing unlawful conduct into the pleadings, which it should not do. Based on the Amended Complaint, Plaintiff's claims against the Defendant Officers fail as a matter of law.

WHEREFORE Defendants Officer Raddatz and Officer Uldrych request that this Honorable Court grant their Motion for Judgment on the Pleadings as to Counts I, II, IV, and V of Plaintiff's Amended Complaint against them, *with prejudice*, and for any such other relief as this Honorable Court deems just and appropriate.

Respectfully submitted,

SmithAmundsen LLC

By: s/Marcie Thorp_____
     One of the Attorneys for
     Defendant Officers

Marcie Thorp (ARDC #6210275)
Joseph P. Carlasare (ARDC # 6308706)
SmithAmundsen LLC
150 North Michigan Avenue, Suite 3300
Chicago, IL 60601
Phone: (312) 894-3259
Fax:　　(312) 997-1770
E-Mail: mthorp@salawus.com