IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VAUGH NEITA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COOK COUNTY ASSISTANT STATE'S | ) | |
| ATTORNEY DAN CALANDRIELLO, | ) | |
| COOK COUNTY, ILLINOIS, CHERIE | ) | No. 14 C 1107 |
| TRAVIS, CITY OF CHICAGO, a municipal | ) | |
| corporation, and CHICAGO POLICE | ) | |
| OFFICERS JANE RADDATZ and M. | ) | |
| ULDRYCH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Vaughn Neita ("Neita") filed this suit, alleging that his constitutional rights were

violated (Counts I and II). 42 U.S.C. § 1983. Neita also brings Illinois state law claims for

indemnification (Count III), malicious prosecution (Count IV), and intentional infliction of

emotional distress ("IIED") (Count V). (Dkt. No. 34 ("Am. Compl.").) All of Neita's allegations

arise from his arrest for animal cruelty and the unsuccessful prosecution that followed. Neita

brings his constitutional claims against defendants Cherie Travis ("Travis") Chicago Police

Officers Jane Raddatz ("Raddatz") and M. Uldrych ("Uldrych"). Neita's malicious prosecution

and IIED claims name Travis, Raddatz, Uldrych, as well as Cook County Assistant State's

Attorney Dan Calandriello ("Calandriello"). Neita's final claim, Count III, seeks indemnification

from the City of Chicago ("City") and Cook County, Illinois ("Cook County") pursuant to 745

ILCS 10/9-102. All of the defendants have moved to dismiss the claims alleged in Neita's

Amended Complaint: Travis in one motion (Dkt. No. 38); Raddatz, Uldrych, and the City in another (Dkt. No. 50); and Calandriello and Cook County in another (Dkt. No. 52). For the reasons stated below, all of the motions (Dkt. Nos. 38, 50, 52) are granted.

<u>PROCEDURAL BACKGROUND</u>

Neita filed his original complaint on February 14, 2014. (Dkt. No. 3.) On July 9, 2014, the court granted (Dkt. No. 24) Calandriello and Cook County's first motion to dismiss (Dkt. No. 15) on the basis of absolute immunity and denied (Dkt. No. 29) Neita's motion for reconsideration (Dkt. No. 25) four days later. On July 14, 2014, Raddatz and Uldrych filed a motion for judgment on the pleadings. (Dkt. No. 27.) On July 21, 2014, however, Neita filed a motion for leave to file an amended complaint, purportedly to "clarify[y] the nature of the allegations against Dan Calandriello." (Dkt. No. 31 ¶ 4.) Because neither Calandriello nor Cook County appeared to oppose the motion on July 24, 2014, the court granted Neita leave to amend his complaint and mooted Raddatz and Uldrych's motion for judgment on the pleadings, which asserted arguments that could be brought in a motion to dismiss. (Dkt. No. 35.)

The court later learned that Calandriello and Cook County did not receive notice of Neita's motion through the court's electronic filing system because they had been dismissed from the case; Neita, unaware that dismissed defendants do not receive electronic notice of filings, failed to provide notice of his motion through another channel. (Dkt. No. 32 at 2.) The court therefore entertained, but ultimately denied, Calandriello and Cook County's motion to reconsider the court's decision to allow Neita's amended complaint. (Dkt. No. 49.) All of the defendants, including the apparently unserved Travis, have now moved to dismiss Neita's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. Nos. 38, 50, 52.)

FACTUAL BACKGROUND

The sparse factual allegations in Neita's Amended Complaint are virtually identical to those in the original complaint. Neita owned and operated a licensed dog grooming business as well as a shelter where he took in rescue dogs. (Am. Compl. ¶ 9.) On February 14, 2012, Neita brought two dogs in his care to the City's Department of Animal Care and Control ("ACC"). (*Id.* ¶ 10.) One dog, Osa, was overly aggressive and had attacked and killed a miniature poodle; the other dog, Olive Oil, was so ill that it was eating fecal matter. (*Id.* ¶ 11-12.) Travis, who was working at ACC when Neita arrived with the dogs, called the police (presumably because she suspected that Neita had mistreated the two dogs). (*Id.* ¶¶ 5, 13.)

Officers Raddatz and Uldrych responded to Travis's call and eventually arrested Neita. (*Id.* ¶¶ 14-16.) The same officers later conducted a search of Neita's dog care business without his consent, but it is not clear whether the search happened before or after Neita's arrest. (*Id.* ¶ 17.) It is also unclear whether the officers had a warrant for the search. This particular allegation, like many of Neita's allegations, concludes that the act was unlawful but omits the facts necessary to support such a conclusion. (*Id.*)

After Neita's arrest, Assistant State's Attorney Calandriello "initiated, caused and/or participated in the charging of [Neita] with multiple counts of animal cruelty, 510 ILCS 70/3.01, and violation of owner's duties, 510 ILCS 70/3," (Am. Compl. ¶ 18), both of which are misdemeanors for first time offenders. Calandriello signed three criminal complaints against Neita, at least one of which was on behalf of Travis. (*Id.* ¶¶ 21-23.) Neita claims that the facts set forth in at least one of the criminal complaints must have been the product of Calandriello's own investigation because they were not within Travis's knowledge. (*Id.* ¶ 21.)

On May 22, 2013, all of the charges filed against Neita were "dismissed in a manner

indicative of his innocence" by the Circuit Court of Cook County, Illinois.[1] (*Id.* ¶ 19.)

On February 14, 2014, Neita filed his five-count complaint, alleging that Travis and the arresting officers violated his Fourth and Fourteenth Amendment rights, (*id.* ¶¶ 21-23, 1-3), and that all defendants maliciously prosecuted him and intentionally inflicted emotional distress (*id.* ¶¶ 29-37). Neita also sought indemnification from the City and Cook County pursuant to 745 ILCS 10/9-102. (Compl. ¶¶ 24-28.) After this court granted Calandriello and Cook County's motion to dismiss the claims against them on the basis of prosecutorial immunity, Neita filed his Amended Complaint alleging the same counts against the same defendants, but purportedly clarifying "the nature of the allegations against Dan Calandriello." (Dkt. No. 31 ¶ 4.)

All of the defendants, including Calandriello and Cook County, have now moved to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).

LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley* v. *Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole* v. *Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice* v. *Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[1]   The parties have not provided the court with any additional information concerning the disposition of Neita's criminal case.

- 4 -

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903.

ANALYSIS

I.     False Arrest (Count I)

In Count I, Neita brings a Fourth Amendment false arrest claim under § 1983 against Raddatz, Uldrych, and Travis. (Am. Compl. ¶¶ 26-28.) To prevail on his false arrest claim, Neita must demonstrate that he was arrested without probable cause. *See McBride* v. *Grice*, 576 F.3d 703, 707 (7th Cir. 2009) ("Probable cause is an absolute bar to a § 1983 claim for false arrest.") "An officer has probable cause to arrest if he has reason to believe, in light of the facts known at the time, that the suspect has committed or is about to commit a crime." *Gonzalez* v. *Vill. of W. Milwaukee*, 671 F.3d 649, 655 (7th Cir. 2012) (citations omitted).

Although Officers Raddatz and Uldrych argue that the threadbare allegations in Neita's Amended Complaint are enough to establish probable cause for his arrest, the court need not reach their argument because Neita's Amended Complaint is subject to dismissal for failure to comply with Federal Rule of Civil Procedure 8(a). In *Iqbal*, the U.S. Supreme Court explained that "the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions . . . will not do." *Iqbal*, 556 U.S. at 678. Although the court must accept as true all factual allegations contained in a complaint, that "tenet . . . is inapplicable to legal conclusions." *Id.*

Despite Neita's contention that his Amended Complaint "contains specific facts that

plausibly suggest he is entitled to relief," (Dkt. No. 55 at 2), the court finds none. Neita's Amended Complaint repeatedly claims that Raddatz and Uldrych arrested him "without probable cause," and that Travis "caused" Raddatz and Uldrych to arrest Neita without probable cause, but omits any "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As discussed above, an officer has probable cause to arrest if he has reason to believe, in light of the facts known at the time, that the suspect has committed or is about to commit a crime. *Gonzalez,* 671 F.3d at 655. Neita's Amended Complaint says nothing about the facts and circumstances known to Raddatz, Uldrych, and Travis at the time of Neita's arrest, other than the conclusory and unsupported assertions that all three individuals lacked probable cause and "knew" they lacked probable cause. Neita's simple recitation of that legal conclusion does plausibly suggest or allow an inference that Raddatz, Uldrych, or Travis did, in fact, lack probable cause. Neita's response to the officers' motion to dismiss, wherein he argues that the officers impermissibly rely on "illogical leaps" and unfavorable inferences, misconstrues the federal pleading standards. It is Neita's obligation, in the first instance, to allege facts from which favorable inferences may be drawn. Neita's Amended Complaint has not done so with respect to Count I and must be dismissed.

Because the court finds that *Iqbal* requires dismissal of Neita's false arrest claim, the court need not determine whether Travis, who is a City employee but not a police officer, participated in Neita's arrest and, if so, was acting under color of law. Count I of Neita's Amended Complaint is dismissed against all three defendants.

II.        Illegal Search and Seizure (Count II)

Up next is Count II, which is an illegal search and seizure claim brought against Raddatz and Uldrych under § 1983. The particular conduct for which Neita seeks to recover, however, is not clear from the face of the Amended Complaint. Neita "realleges" all of his foregoing paragraphs and then summarily claims that the officers searched and seized his person and property in violation of his Fourth Amendment rights. (Am. Compl. ¶¶ 1-2.)[2] He also seeks to recover for the alleged "deprivation of his liberty and the taking of his person." (*Id.* ¶ 3.)

Neita's seizure claim, which concerns the taking of his person, is merely a recitation of his false arrest claim in Count I and can be dismissed for the reasons explained in the previous section. *See Gonzalez*, 671 F.3d at 655 ("'False arrest' is shorthand for an unreasonable seizure prohibited by the Fourth Amendment.") That leaves only Neita's search claim, but it remains unclear whether Neita intends to recover for the search of his person, the search of his dog care business, or both. In response to Raddatz and Uldrych's motion to dismiss, Neita addressed only the search of his business. The court therefore assumes that Neita concedes the search of his person was a lawful search incident to arrest, *see Chimel* v. *California*, 395 U.S. 752 (1969), and will address only the search of Neita's dog care business.

The court's analysis is again hindered by Neita's failure to plead the factual content necessary to support his claim—specifically, Neita does not state whether Raddatz and Uldrych had a warrant to search his business. Because the officers' motion is conspicuously silent on the issue, the court assumes they did not. The officers instead argue that their entry into Neita's business was authorized by section 10 of the Illinois Humane Care for Animals Act ("IHCAA").

---

[2]    Neita's allegations in Count II, which appear on page 5 of his Amended Complaint, are incorrectly numbered as paragraphs 1-3. The court advised Neita of the numbering miscue in Count II when it ruled on his original complaint. (Dkt. No. 24 at 2 n.1.) Neita—or Neita's counsel—declined to fix the error.

The IHCAA provides that:

> (a) Upon receiving a complaint of a suspected violation of this Act, a Department investigator, any law enforcement official, or an approved humane investigator may, for the purpose of investigating the allegations of the complaint, enter during normal business hours upon any premises where the animal or animals described in the complaint are housed or kept, provided such entry shall not be made into any building which is a person's residence, except by search warrant or court order.

510 ILCS 70/10. Neita's response, which is that there was no complaint against his *business*, in unavailing. Neita concedes that there was at least one complaint, Travis's, concerning the two dogs he brought to the ACC. (Dkt. No. 46 at 3-4.) Under the plain language of the statute, Travis's complaint is sufficient to allow entry upon "any premises where the animals . . . described in the complaint are housed or kept." 510 ILCS 70/10. In this case, that premises was Neita's dog care business.

None of the parties address the elephant in the room, which is whether the IHCAA is a valid exception to the warrant requirement. Illinois courts have described section 10 of the IHCAA as an "extraordinary exception to the general warrant requirement for investigatory searches of nonresidential premises." *People* v. *Thornton*, 676 N.E.2d 1024, 1027 (Ill. App. Ct. 2d Dist. 1997). The problem is that Illinois cannot legislate exceptions to the Fourth Amendment, however extraordinary. It is well established that absent limited exceptions—consent or exigency—a warrantless search of the home is presumptively unreasonable and thus a violation of the Fourth Amendment. *See, e.g.*, *Groh* v. *Ramirez*, 540 U.S. 551, 564 (2004). The same protection extends to private commercial property, albeit with a lesser expectation of privacy. *See Lesser* v. *Espy*, 34 F.3d 1301, 1305 (7th Cir. 1994) (citing *Donovan* v. *Dewey*, 452 U.S. 594, 598-99 (1981)). For example, in "closely regulated" industries, "the privacy interests of business owners may be so attenuated, and the government's interest in regulating the particular industry so strong, that a warrantless inspection of the commercial premises might be

reasonable within the meaning of the Fourth Amendment." *Lesser*, 34 F.3d at 1305. The test to determine whether a business is "closely regulated," set forth in *New York* v. *Burger*, 428 U.S. 691 (1987), is four parts, fact intensive, and ultimately a question for another day. Here, it is enough that the IHCAA existed, which entitles Raddatz and Uldrych to qualified immunity.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson* v. *Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982)). The only clearly established law in February 2012 was the IHCAA, which expressly authorized Raddatz and Uldrych's search of Neita's dog care business. The question of whether the Illinois statute is consistent with the Fourth Amendment has, as far as this court can tell, never been addressed (until now). Accordingly, by following Illinois law as it existed at the time of the search and as it still exists today, Raddatz and Uldrych did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known. They are therefore entitled to qualified immunity and Neita's illegal search claim must be dismissed.

III.    Malicious Prosecution (Count IV)[3]

In Count IV, Neita brings a state law malicious prosecution claim against all of the individual defendants: Raddatz, Uldrych, Travis, and Calandriello. (Am. Compl. ¶¶ 34-37.) Neita alleges that all of the individual defendants "knowingly sought to and did in fact maliciously prosecute [Neita] on false charges for which they knew there was no probable cause." (*Id.* ¶ 35.)

---

[3]    Although the foregoing analysis, if correct, would leave Neita with no remaining federal claims, the court exercises supplemental jurisdiction over Neita's state law claims pursuant to 28 U.S.C. § 1367(c)(3). This court has already expended substantial judicial resources on Neita's state law claims, primarily when it dismissed them in an earlier opinion. *See Neita* v. *Calandriello*, 2014 WL 3360169 (N.D. Ill. July 9, 2014) (Holderman, J.).

Under Illinois law, "to state a claim for malicious prosecution, a plaintiff must allege facts showing: (1) the defendants commenced or continued an original criminal [ ] proceeding; (2) the proceeding terminated in favor of plaintiff; (3) there was an absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Hulbert* v. *Charles*, 938 N.E.2d 507, 512 (Ill. 2010). The absence of any of these five elements "bars a plaintiff from pursuing [his] claim." *Swick* v. *Liataud*, 662 N.E.2d 1238, 1242 (Ill. 1996). The defendants' offer a number of different arguments for dismissing Neita's malicious prosecution claim; the court addresses most of them below.

A. Travis

Travis argues that the malicious prosecution claim against her fails because Neita has not alleged any facts to satisfy the fourth element of a malicious prosecution claim: malice. (Dkt. No. 38 at 8.) "'Malice is defined as the initiation of a prosecution for any reason other than to bring a party to justice.'" *Holland* v. *City of Chicago*, 643 F.3d 248, 255 (7th Cir. 2011) (quoting *Rodgers* v. *Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 842 (Ill. 2000)). Neita concedes that his Amended Complaint is devoid of facts supporting malice with respect to Travis, but argues that the court may infer malice from the absence of probable cause. (Dkt. No. 46 at 4 (citing *Holland*, 643 F.3d at 255)). Neita is partially correct. A court may infer malice when a defendant lacks probable cause, but only when the circumstances indicate a lack of good faith. *Holland*, 643 F.3d at 255. That is not the case here. Neita does not allege that Travis lied to the police, falsified evidence, or withheld exculpatory evidence. *See Sneed*, 146 F.3d at 481 (citing *Reed* v. *City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996)) (listing actions that support malice). Travis's call to the police, which she made after Neita presented her with two sick dogs, is simply not the type of act from which the court can plausibly infer malice or a lack of good

faith. Absent additional facts, which Neita has not provided, Neita cannot establish the fourth element of a malicious prosecution claim against Travis.

Although the court need not belabor the point, it is worth noting that Neita has also failed to establish that Travis initiated a proceeding against Neita, which is the first element of a malicious prosecution claim. Under Illinois law, "in order to commence or continue a criminal proceeding, the defendant must have initiated the criminal proceeding or 'his participation in it must have been of so active and positive a character as to amount to advice and cooperation.'" *Logan* v. *Caterpillar*, Inc., 246 F.3d 912, 922 (7th Cir. 2001) (quoting *Denton* v. *Allstate Ins. Co.*, 504 N.E.2d 756, 760 (Ill. App. Ct. 1st Dist. 1987)). With respect to a private citizen, legal causation exists "only if the plaintiff can demonstrate that the defendant (1) instituted the proceedings against the plaintiff; (2) knowingly made false statements to the police; or (3) requested, directed, or pressured the officer into swearing out the complaint for the plaintiff's arrest." *Logan*, 246 F.3d at 922.

Neita cannot establish that Travis initiated the criminal proceeding because he seemingly cannot keep his facts straight. In his Amended Complaint, Neita states only that Travis "caused the [d]efendant officers to arrest [Neita]." (Am. Compl. ¶ 15.) Such a conclusory allegation does not "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In his response to Travis's motion to dismiss, however, Neita states that Travis signed criminal complaints against him leading to his arrest. (Dkt. No. 46 at 3.) That allegation might suffice to establish that Travis initiated the proceeding against him, had Neita not disavowed the claim in an earlier motion. Specifically, in his response to the officer defendants' (now moot) motion for judgment on the pleadings, Neita stated that "there was no complaint made against [Neita] whatsoever." (Dkt. No. 43 at 6.) The court, confronted with

Neita's plainly contradictory allegations, cannot infer that Travis initiated anything against Neita.

Accordingly, because Neita has failed to allege facts sufficient to establish the first and fourth elements of his malicious prosecution claim, his claim against Travis is dismissed.

B. Officers Raddatz and Uldrych

Raddatz and Uldrych argue that the malicious prosecution claim against them must be dismissed because Neita failed to "allege that the officers committed some improper act after they arrested him without probable cause, for example, that they pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence." (Dkt. No. 50 at 10 (quoting *Snodderly* v. *R.U.F.F. Drug Enforcement Task Force*, 239 F3d 892, 901 (7th Cir. 2001)). In *Snodderly*, however, the Seventh Circuit addressed the requirements for a malicious prosecution against police officers under § 1983, not Illinois law. *Id.* at 901.

Nevertheless, Neita's malicious prosecution claim against the officers fails for the same reason it failed against Travis: the absence of malice. As is the case throughout Neita's Amended Complaint, Neita declares the existence of malice—or asks the court to infer its existence—without offering any factual content that would allow an inference of malice or even a lack of good faith. Because Neita's Amended Complaint lacks the factual content sufficient to support the fourth element of his claim, malice, he has failed to state a malicious prosecution claim against Raddatz and Uldrych.

C. Assistant State's Attorney Calandriello

Neita's claim against Calandriello, the only remaining defendant in Count IV, fares no better. It bears mention that the Amended Complaint represents Neita's third attempt to sidestep the prosecutorial immunity standing in the way of his claim against Calandriello. Neita's

Amended Complaint, like his arguments in response to Calandriello's first motion to dismiss and in support of his (denied) motion for reconsideration, contends that Calandriello is not entitled to immunity on Neita's malicious prosecution claim because he acted as a "complaining witness," not a prosecutor. (Am. Compl. ¶ 20.) Calandriello has, unsurprisingly, again moved to dismiss the claim against him on the basis of prosecutorial immunity.

Illinois courts adopt and apply the doctrine of prosecutorial immunity articulated by the United States Supreme Court in *Imbler* v. *Pachtman*, 424 U.S. 409 (1976) and its progeny. *See, e.g.*, *Hobbs* v. *Cappelluti*, 899 F. Supp. 2d 738, 769 (N.D. Ill. 2012) (Lefkow, J.) ("Under Illinois law, the state and federal doctrines of prosecutorial immunity are coterminous."); *see also Frank* v. *Garnati*, 989 N.E.2d 319, 322 (Ill. App. Ct. 5th Dist. 2013) (holding "the state and federal doctrines of prosecutorial immunity are coterminous and prosecutors acting within the scope of their prosecutorial duties are absolutely immune from liability under state law"). Under Illinois and federal law, it is well established that "[p]rosecutors are absolutely immune from suits for monetary damages . . . for conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Smith* v. *Power*, 346 F.3d 740, 742 (7th Cir.2003) (quoting *Imbler*, 424 U.S. at 430). "A prosecutor is shielded by absolute immunity when he acts as 'an advocate for the State' but not when his acts are investigative and unrelated to the preparation and initiation of judicial proceedings." *Id.* (quoting *Buckley* v. *Fitzsimmons*, 509 U.S. 259, 274 (1993)). Whether Calandriello is absolutely immune from suit, therefore, depends on whether his conduct, as alleged in Neita's Amended Complaint, is properly characterized as investigatory or prosecutorial. To make the determination, the court must "look to the nature of the function that [Calandriello] was performing in the particular case." *Henderson* v. *Lopez*, 790 F.2d 44, 46 (7th Cir. 1986).

Neita originally sought to hold Calandriello liable for his decision to initiate the prosecution against Neita. (Dkt. No. 3 ¶ 18.) This court quickly rejected that argument, noting that the charging decision is the function that "most often invites a common-law tort action," and is always entitled to prosecutorial immunity. (Dkt. No. 24 at 4-5 (quoting *Imbler*, 424 U.S. at 421).) Confronted by Calandriello's 12(b)(6) motion arguing the same, Neita adopted a second theory of liability in his response brief. There, Neita argued that Calandriello could be liable as a "complaining witness," rather than as a prosecutor, because Calandriello signed a criminal complaint listing Travis as the complainant. (Dkt. No. 18 at 3.) This court rejected Neita's alternate theory, concluding that the preparation and signing of the criminal complaint was prosecutorial, not investigative. *See Neita*, 2014 WL 3360169, at *2. The court's opinion apparently left Neita with the impression that the court had "construed [Neita's] allegations as the opposite of what they were," causing Neita to move for reconsideration. (Dkt. No. 25.) The court denied Neita's motion for reconsideration and emphasized that he had not alleged that Calandriello witnessed the underlying acts, Neita's arrest, or that Calandriello was even involved in the case until he charged Neita with animal cruelty in Illinois state court. (Dkt. No. 29 at 2 n.1.)

Neita, undeterred by the court's previous rulings, amended his complaint to include two new allegations against Calandriello: (1) Calandriello did not act as an advocate when he swore to the facts underlying the charges against Neita (Am. Compl. ¶ 20); and (2) Calandriello must have acted as an investigator because he attested to facts that he could not have received from Travis (Am. Compl. ¶ 21; Dkt. No. 55 at 10). The first allegation is an unadorned legal conclusion that does not advance Neita's claims. The second allegation, by contrast, might allow the court to draw the reasonable inference that Calandriello participated in the investigation

before charging Neita, but only if it were supported by additional facts. Neita has provided none, failing even to identify the specific facts Calandriello purportedly could not have received from Travis. Although the court must accept all pleaded facts as true, it must also determine, using its "judicial experience and common sense," whether the facts alleged state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679. Neita's allegation that Calandriello could not have learned certain facts from Travis does not support a plausible claim that Calandriello acted in an investigative, rather than prosecutorial, capacity. Despite Neita's inverse pleading strategy, his Amended Complaint remains devoid of any allegations that Calandriello witnessed the acts at the ACC, participated in the search of Neita's business, or had any involvement until he charged Neita in state court.

Accordingly, because Neita has not alleged facts sufficient to support his allegation that Calandriello acted in a non-prosecutorial function, Neita's malicious prosecution against Calandriello, the only remaining defendant, must be dismissed.

IV.    Intentional Infliction of Emotional Distress (Count V)

In Count V, Neita brings a state law IIED claim against all the defendants. As an initial matter, Calandriello is entitled to absolute immunity against Neita's IIED claim for the same reasons he is immune to the malicious prosecution claim. Raddatz and Uldrych argue that Neita's claim is barred by the Illinois Tort Immunity Act's one -year limitations period. *See Evans* v. *City of Chicago,* 434 F.3d 916, 934 (7th Cir.2006); 745 ILCS 10/8–101. They are incorrect. "Courts in this district have consistently held that IIED claims based on facts alleged in parallel claims for malicious prosecution accrue only when state criminal proceedings are terminated." *Carroccia* v. *Anderson*, 249 F. Supp. 2d 1016, 1028 (N.D. Ill. 2003) (Kennelly, J.) (collecting cases). Because Neita's IIED claim is based on the same allegedly "extreme and

outrageous" facts supporting his malicious prosecution claim, Neita's IIED claim did not accrue until the charges against him were dismissed on May 22, 2013. He filed the instant lawsuit nine months later on February 14, 2014. His IIED claim is therefore timely.

Raddatz, Uldrych, and Travis also argue that Neita has failed to adequately plead his IIED claim because he has not alleged facts establishing that any of the defendants' conduct was extreme and outrageous. Under Illinois law, a plaintiff must prove that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen–El* v. *Cook Cty. Sheriff's Dept.*, 602 F.3d 852, 864 (7th Cir. 2010) (citing *Kolegas* v. *Heftel Broad. Corp.,* 607 N.E.2d 201, 211 (Ill. 1992)). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Id.* (quoting *Kolegas*, 607 N.E.2d 201).

The court agrees that Neita's conclusory statement that the conduct described in his Amended Complaint was "extreme and outrageous, exceeding all bounds of human decency" is not enough. The standard for an IIED claim is high, and "under no circumstances [do] mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities qualify as outrageous conduct." *Feltmeier* v. *Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003) (internal citations and quotations omitted). The net result of Neita's "extreme and outrageous" treatment was two misdemeanor criminal charges that were eventually dismissed. He has not alleged facts establishing that Travis wrongly called the police, that the police wrongly arrested him, or that Calandriello wrongly charged him. Nor has Neita alleged any facts establishing that he was mistreated in any way, with the exception of being charged with two misdemeanors that the State

- 16 -

(perhaps) could not prove. The conduct alleged is not the type of conduct sufficient to sustain an IIED claim; if that were the case, every defendant who wins at trial or whose case is dismissed would have a viable IIED claim. Neita's IIED claim is dismissed against Travis, Raddatz, and Uldrych (and Calandriello, but on separate grounds).

V.     City of Chicago and Cook County (Count III)

In Count III, Neita seeks to hold Cook County liable for Calandriello's malicious prosecution and intentional infliction of emotional distress, and to hold the City liable for all of his claims against Raddatz, Uldrych, and Travis. Under 745 ILCS 10/9-102, a public entity may pay any tort judgment or settlement fro which its employee becomes liable while acting within the scope of his employment. As the court explained to Neita in its first opinion, Cook County is not Calandriello's employer. *See Neita*, 2014 WL 3360169, at *3. Neita failed to address the issue when he amended his complaint. That failure, although disappointing, is of no consequence because the court concludes that Neita has failed to state any claim against any of the defendants. There can consequently be no claim for indemnification against their employers. Count III is dismissed.

## CONCLUSION

For the reasons explained above, Travis's motion to dismiss [38], Raddatz, Uldrych, and the City's motion to dismiss [50], and Calandriello and Cook County's motion to dismiss [52] are all granted. Neita's Amended Complaint is dismissed in its entirety because Neita has failed to plead facts sufficient to establish any of his claims or, in the case of Calandriello, has sued an immune defendant. While Rule 8 does not set a high standard for pleading in a complaint, it likewise "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. Civil case terminated.

ENTER:

_JAMES F. HOLDERMAN_
JAMES F. HOLDERMAN
District Judge, United States District Court

Date: October 30, 2014